Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HERNAN PRADOS, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| CONSTELLATION PHARMACEUTICALS, INC., MARK A. GOLDSMITH, JIGAR RAYTHATHA, JAMES E. AUDIA, SCOTT BRAUNSTEIN, STEVEN L. HOERTER, RICHARD LEVY, and ELIZABETH G. TRÈHU, | |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Hernan Prados ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against Constellation Pharmaceuticals, Inc. ("Constellation" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the

1

"Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Constellation by MorphoSys Development Inc. ("Purchaser"), an indirect wholly owned subsidiary of MorphoSys AG ("MorphoSys").

## JURISDICTION AND VENUE

2.       The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.       Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District.[1]

5.       In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.       Plaintiff is, and has been at all relevant times hereto, an owner of Constellation common stock.

---

[1] For example, the Company reportedly participated in conferences in New York City in recent years.

7.     Defendant Constellation is a clinical-stage biopharmaceutical company that discovers and develops therapeutics to address serious unmet medical needs in patients with cancers associated with abnormal gene expression or drug resistance. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "CNST."

8.     Defendant Mark A. Goldsmith ("Goldsmith") is a director of the Company.

9.     Defendant Jigar Raythatha ("Raythatha") is President, Chief Executive Officer, and a director of the Company.

10.    Defendant James E. Audia ("Audia") is a director of the Company.

11.    Defendant Scott Braunstein ("Braunstein") is a director of the Company.

12.    Defendant Steven L. Hoerter ("Hoerter") is a director of the Company.

13.    Defendant Richard Levy ("Levy") is a director of the Company.

14.    Defendant Elizabeth G. Tréhu ("Tréhu") is a director of the Company.

15.    Defendants Goldsmith, Raythatha, Audia, Braunstein, Hoerter, Levy, and Tréhu are collectively referred to herein as the "Individual Defendants."

16.    Defendants Constellation and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

17.    On June 2, 2021, Constellation and MorphoSys announced that they had entered into a definitive agreement whereby MorphoSys would acquire Constellation for $34.00 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**MorphoSys to Acquire Constellation Pharmaceuticals**

*Accelerates Growth Strategy by Adding Two Mid- to Late-Stage Product
Candidates: Pelabresib (CPI-0610) and CPI-0209*

*Bolsters Position in Hematology-Oncology and Expands into Solid Tumors
Best-in-Class Combined Discovery and Development Capabilities Accelerates
Ability to Provide New Cancer Treatments to Patients*

*MorphoSys Enters into Strategic Funding Partnership with Royalty Pharma*

*MorphoSys to Host Conference Call and Webcast at 2:00 PM CEST / 8:00 AM
EST Today*

June 02, 2021 07:25 AM Eastern Daylight Time

PLANEGG/MUNICH, Germany & CAMBRIDGE, Mass.--(BUSINESS WIRE)--
MorphoSys AG (FSE: MOR; NASDAQ: MOR) ("MorphoSys"), and Constellation
Pharmaceuticals, Inc., (NASDAQ: CNST) ("Constellation") today announced that
they have entered into a definitive agreement whereby MorphoSys will acquire
Constellation for $34.00 per share in cash, which represents a total equity value of
$1.7 billion. The transaction has been unanimously approved by the management
board (*Vorstand*) and the supervisory board (*Aufsichtsrat*) of MorphoSys, as well
as the Board of Directors of Constellation and is expected to close in the third
quarter of 2021.

Constellation is a clinical-stage biopharmaceutical company using its expertise in
epigenetics to discover and develop novel therapeutics that address serious unmet
medical needs in patients with various forms of cancer. Constellation's two lead
product candidates, pelabresib (CPI-0610), a BET inhibitor, and CPI-0209, a
second-generation EZH2 inhibitor, are in mid- to late-stage clinical trials and have
broad therapeutic potential to offer meaningful benefits to patients with various
hematological and solid tumors. Pelabresib has the potential to be a first- and best-
in-class BET inhibitor and is currently in Phase 3 clinical trials for myelofibrosis,
a bone marrow cancer that disrupts the body's normal production of blood cells.
CPI-0209 is currently in Phase 2 with best-in-class potential for treating
hematological and solid tumors. Constellation's pipeline also includes numerous
preclinical compounds.

\*       \*       \*

**Transaction Details**

Under the terms of the merger agreement, an indirect wholly-owned subsidiary of
MorphoSys will promptly commence a tender offer to acquire all of the outstanding
shares of Constellation's common stock at a price of $34.00 per share in cash.

Following successful completion of the tender offer, MorphoSys will acquire all remaining shares not tendered in the offer through a second step merger at the same price as in the tender offer.

MorphoSys plans to pay an all-cash consideration for the transaction. The tender offer is not subject to a financing condition.

The purchase price of $34.00 per share in cash represents a premium of approximately 70% to Constellation's volume-weighted average price for the last five trading days.

Consummation of the tender offer is subject to various conditions including a minimum tender of at least a majority of outstanding Constellation shares, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and the receipt of any approvals or clearances required to be obtained under the applicable antitrust laws, and other customary conditions. The transaction is expected to close in the third quarter of 2021.

Following close, MorphoSys will remain headquartered in Munich, Germany, and will maintain a significant commercial and R&D presence in Boston, Massachusetts.

**Advisors**

Goldman Sachs Bank Europe SE acted as financial advisor to MorphoSys and Skadden, Arps, Slate, Meagher & Flom LLP as its legal advisor. Centerview Partners LLC acted as financial advisor to Constellation and Wachtell, Lipton, Rosen & Katz as its legal advisor. Goodwin Procter LLP acted as legal advisor to Royalty Pharma.

*       *       *

**About MorphoSys**

MorphoSys (FSE & NASDAQ: MOR) is a commercial-stage biopharmaceutical company dedicated to the discovery, development and commercialization of innovative therapies for people living with cancer and autoimmune diseases. Based on its leading expertise in antibody, protein and peptide technologies, MorphoSys is advancing its own pipeline of new drug candidates and has created antibodies which are developed by partners in different areas of unmet medical need. In 2017, Tremfya® (guselkumab) – developed by Janssen Research & Development, LLC and marketed by Janssen Biotech, Inc., for the treatment of plaque psoriasis – became the first drug based on MorphoSys' antibody technology to receive regulatory approval. In July 2020, the U.S. Food and Drug Administration (FDA) granted accelerated approval of the company's proprietary product Monjuvi® (tafasitamab-cxix) in combination with lenalidomide in patients with a

certain type of lymphoma. Headquartered near Munich, Germany, the MorphoSys group, including the fully owned U.S. subsidiary MorphoSys US Inc., has more than 600 employees. More information at www.morphosys.com or www.morphosys-us.com.

Monjuvi® is a registered trademark of MorphoSys AG.

Tremfya® is a registered trademark of Janssen Biotech, Inc.

**About Constellation**

Constellation Pharmaceuticals is a clinical-stage biopharmaceutical company developing novel therapeutics that selectively modulate gene expression to address serious unmet medical needs in patients with cancer. The Company has a deep understanding of how epigenetic and chromatin modifications in cancer cells and in the tumor and immune microenvironment play a fundamental role in driving disease progression and drug resistance. Constellation is driving development of the BET inhibitor pelabresib for the treatment of myelofibrosis as well as the EZH2 inhibitor CPI-0209 for the treatment of advanced malignancies. The Company is also applying its broad research and development capabilities to explore other novel targets that directly and indirectly impact gene expression to fuel a sustainable pipeline of innovative small-molecule product candidates.

18.     On June 16, 2021, the Company filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

**B.  The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

19.     The Solicitation Statement, which recommends that Constellation shareholders tender their shares to Purchaser in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Constellation's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

20.     The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Background of the

Offer and the Merger; (ii) Reasons for the Company Board's Recommendation; (iii) Management Projections; and (iv) Opinion of Centerview Partners LLC.

21.     The tender offer in connection with the Proposed Transaction is set to expire at one minute after 11:59 p.m. New York City Time on July 14, 2021 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Constellation's Financial Projections

22.     The Solicitation Statement omits material information concerning Constellation's financial projections.

23.     With respect to the "Management Projections: Case 1" and "Management Projections: Case 2," the Solicitation Statement fails to disclose: (1) the quantification of the risk-adjustments made to the projections; (2) all line items underlying (i) EBIT and (ii) Unlevered Free Cash Flow; (3) the Company's net operating losses; (4) the Company's net income projections; and (5) a reconciliation of all non-GAAP to GAAP metrics.

24.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such

information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

25.     When a company discloses non-GAAP financial metrics in a Solicitation Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[2]

26.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning Centerview's Analyses**

27.     In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Centerview.

28.     The Solicitation Statement fails to disclose the following concerning Centerview's

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited July 1, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

"*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%; (2) all line items underlying the risk-adjusted, after-tax unlevered free cash flows of the Company over the period beginning on July 1, 2021 and ending on December 31, 2040; (3) the implied terminal value of the Company; (4) Centerview's basis for assuming that the Company's unlevered free cash flows would decline in perpetuity after December 31, 2040 at a rate of free cash flow decline of 75% year over year; (5) the tax savings from usage of the Company's estimated federal net operating losses of $440 million as of December 31, 2020 and future losses; (6) the present value of the estimated cost of a $200 million equity raise in 2025 in the "Management Projections: Case 1" and a $350 million equity raise in 2025 in the "Management Projections: Case 2"; and (7) the number of fully-diluted outstanding Company shares as of May 27, 2021.

29.    The Solicitation Statement fails to disclose the following concerning Centerview's "*Analyst Price Target Analysis*": (1) the individual price targets observed by Centerview in its analysis; and (2) the sources thereof.

30.    With respect to Centerview's "*Premia Paid Analysis*," the Solicitation Statement fails to disclose the individual premiums paid in each selected transaction.

31.    The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Centerview's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, the Company's shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This

omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

32.     The Solicitation Statement omits material information concerning the sales process leading up to the Proposed Transaction.

33.     The Solicitation Statement provides that, during the sales process, the Company entered into confidentiality agreements with multiple potential buyers, including "Party B," "Party E," "Party F," and "Party G."

34.     The Solicitation Statement, however, fails to disclose the terms of those confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

35.     Without this information, Constellation shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Constellation shareholder would want to know, prior to tendering their shares in connection with the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

36.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

37.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

38.     Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

39.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

40.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

41.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

42.     Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

43.     By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

44.     Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**

**For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated
Thereunder
<u>Against All Defendants</u>**

45.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

46.     Defendants caused the Solicitation Statement to be issued with the intent to solicit

shareholder support for the Proposed Transaction.

47.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder

require full and complete disclosure in connection with tender offers. Specifically, Section

14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or
> reject a tender offer or request or invitation for tenders shall be made in accordance
> with such rules and regulations as the Commission may prescribe as necessary or
> appropriate in the public interest or for the protection of investors.

48.     SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the

Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in
> section 14(d)(1) of the Act with respect to a tender offer for such securities shall
> include the name of the person making such solicitation or recommendation and
> the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101)
> or a fair and adequate summary thereof[.]

49.     In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a

company:

> Furnish such additional material information, if any, as may be necessary to make
> the required statements, in light of the circumstances under which they are made,
> not materially misleading.

50.     During the relevant period, Defendants, individually and in concert, directly or

indirectly, disseminated or approved the false and misleading Solicitation Statement specified

above, which failed to disclose material facts necessary in order to make the statements made, in

light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

51.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

52.     Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

53.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

**COUNT III**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

54.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

58.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.     Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 1, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*